ULVILDEN, Respondent, v. SORKEN, et al, Appellants.

(237 N. W. 565.)

(File No. 6787. Opinion filed June 26, 1931.)

*Teigen & Davis,* of Sioux Falls, for Appellants.

*B. O. Stordahl,* of Sioux Falls, for Respondent.

ROBERTS, J.   Plaintiff brought this action to secure judgment upon a note for $2,000 and interest and for the foreclosure of a real estate mortgage given as security.   The note provided on its face for the payment of 6 per cent interest per annum from date, and further provided in a printed provision that, if any part of the principal should not be paid at maturity, it would bear interest at 12 per cent per annum.   Defendants Gilseth and Borgen indorsed the note for the accommodation of defendant Sorken and as security to plaintiff.   Execution and indorsement of the note was admitted by the defendants, but they pleaded usury as a defense to the collection of any interest.

Plaintiff testified that he procured a number of blank forms of notes at a bank and supposed that they were all right; that he never intended to charge or collect on the notes more than 6 per cent interest; that he had never at any time asked any of the defendants for more than 6 per cent; that the note represented money loaned to the defendant Sorken and was given in renewal of such obligation; that the former notes were drawn upon the same form as the one upon which this action was brought.

It appears that the original loan was made in the year 1918 or 1919 and at a time when it was lawful for parties to agree to pay interest at a rate not exceeding 12 per cent per annum. The maximum rate of interest which might be contracted for on money loaned was reduced to 10 per cent per annum by the provisions of chapter 211 of the Session Laws of 1923.   However, this action is upon the note without reference to the same being a renewal of a loan made prior to this amendment of the statute.

The trial court made findings to the effect that it was not the intention of the plaintiff at any time to ask or receive more than 6 per cent interest; that it was through a mistake or inadvertence that the note provided for interest at the rate of 12 per cent after maturity; and that the note was not in fact usurious.   On such findings the plaintiff was awarded judgment for the amount of principal and interest at the rate of 6 per cent per annum, from which judgment and order denying a new trial defendants appeal.

The first question for our determination is whether a note is usurious under the statutes of this state which provides for the payment of a higher rate of interest than 10 per cent per annum after maturity.   Section 1040, Rev. Code 1919, as amended by

chapter 211, Laws of 1923, above referred to, defines usury as follows: "The highest rate of interest which it shall be lawful to take, receive, retain or contract for in this state, shall be ten per cent (10%) per annum and at the same rate for a shorter time. * * *"

There is abundant authority in support of the doctrine that a provision included in a note in good faith for a higher rate of interest after maturity until paid than permitted by the usury statutes does not render the note usurious. 39 Cyc. 954; Notes, 49 L. R. A. 550, and 7 Ann. Cas. 490. It is reasoned that such provision contemplates prompt payment of the debt at maturity, and that the higher rate after maturity is exacted as a penalty to insure a prompt payment of the obligation, and that the debtor by the terms of the contract can avoid the payment of the higher rate by payment of the obligation at or before maturity.

Requiring the maker of a note to pay a higher rate of interest after maturity for the use of money is likely to be as oppressive as when required to pay a higher rate during the term of the loan. It may not be within the power of the borrower promptly to meet his obligations at maturity. If a borrower is to be protected from the extortion of an excessive rate for the use of money, there is no apparent reason why it should be limited to the term of the loan. As stated in Richardson v. Brown, 68 Tenn. (9 Baxt.) 242: "What difference can it make in the essence of the transaction that the excessive rate shall be agreed to be paid for one period rather than another? Is it not equally the compensation demanded by the lender or the creditor for the use of his money? We think it is, most certainly. The fact that the party might relieve himself from this payment by payment of the bill at the day agreed upon for its falling due, only prevents other contracts from being enforced against him; but if he for any cause failed to pay, then the interest at the rate contracted becomes due by virtue of the agreement, is paid as interest for the continued use of the money, and is contrary to the requirements of the law." See, also, 1 Sutherland on Damages (4th Ed.) § 318; Miller v. Insurance Co., 118 N. C. 618, 24 S. E. 484, 54 Am. St. Rep. 741.

Interest is defined under section 1037, Rev. Code 1919, as "the compensation allowed for the use, or forbearance, or detention of money or its equivalent." In construing an identical pro-

vision the court, in Parks v. Lubbock, 92 Tex. 637, 51 S. W. 322, 323, said: "According to this article, as we analyze it, the use of money referred to is that which is contracted for when a loan is made. The forbearance occurs when there is a debt due or to become due, and the parties agree to extend the time of its payment. The detention of money arises in a case when a debt has become due, and the debtor withholds its payment, without a new contract giving him a right to do so. * * * The conclusion is not to be resisted that there was a purpose in adding the word 'detention' to the accepted definition of 'interest,' and that this purpose was to meet the case when the debtor should detain the money owed beyond the stipulated period of forbearance, and so to provide that a promise to pay an additional sum for such detention should be deemed interest, and not merely damages by way of a penalty to secure a prompt performance of the contract."

In 27 R. C. L. § 33, p. 232, it is said: "Where a borrower has agreed to pay a rate of interest not forbidden by law, but has stipulated that, in the event of his not making payment at the time specified, the obligation shall bear a higher rate of interest, either from default or from the date of its execution, or that some specific sum shall be paid in addition to the principal and interest contracted for, the increased rate is generally regarded as a penalty and not within the usury laws. * * * But under a statute defining interest as the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money, that which would have been deemed a penalty at common law is made interest, and a stipulation for interest after maturity at a rate in excess of the legal rate is usurious."

In the instant case the note fixes the rate of interest at 12 per cent per annum after maturity. Within the definitions of interest and usury found in the statutes of this state and the authorities aforementioned, the note in question is upon its face usurious. It is claimed, however, by the respondent that there was no intention on the part of the plaintiff to exact interest in excess of 6 per cent per annum, and that it was through a mistake or inadvertence that the note provided for 12 per cent after maturity. In other words, it is contended by counsel for the defendant that there was an entire absence of intent on the part of the plaintiff

to charge a usurious rate, and this is the finding, in substance, of the trial court.

■ ■ While parol evidence, as a general rule, is admissible for the purpose of showing that by reason of a mistake a written instrument does not express the intention of the parties, yet such evidence is inadmissible, where its effect would be to reform the instrument, except where reformation is proper and has been sought. 22 C. J. 1224, 1228; Castle v. Gleason, 31 S. D. 590, 141 N. W. 516.

In Castle v. Gleason, supra, this court says: "It is certainly fundamental that where one seeks to recover in a cause of action based upon a written instrument, he must rely upon the writing as it was executed, or else must seek a reformation thereof; therefore, in the action before us, plaintiff was bound to recover, if at all, upon the chattel mortgage as executed and filed, or else procure a reformation thereof and prove that defendant had knowledge or notice of the error in the instrument."

The case of Fellows v. Christensen, 28 S. D. 353, 133 N. W. 814, 816, was one brought to recover the amount claimed to be due upon a promissory note. The defendant pleaded usury. The note upon its face was valid, but the defendant pleaded that the real contract between the parties, as verbally entered into at the time of the giving of the note, was usurious. Concerning the qusetion as to the admissibility of parol evidence, the opinion states: "It would appear that the trial court was applying to this transaction section 1287 of the Civil Code [section 908, R. C. 1919], which reads: 'A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise.' If it had been conceded that the original contract was the note, and it had been claimed that it was afterwards altered by an agreement, such statute would apply; but, even if such were the case, it must be remembered that such section presupposes a valid contract which parties seek to prove was altered by another valid agreement. The question in this case was not whether there had been a concededly valid contract altered by a subsequent oral agreement, but solely what was the actual contract entered into, and was it usurious or not—was the written contract but a mere cloak used to conceal another and an unlawful contract? No proposition of law is better

established than that oral testimony is always competent to show the illegality of an apparently valid contract. It will be apparent that, for the reasons above stated, the rule that all oral negotiations are presumed to be merged into the written contract and cannot be shown to vary, add to, or contradict same, has no application where the evidence of the oral transaction is offered to show the illegality of transaction."

■■ Thus a written contract, though fair and lawful on its face, may be shown by parol evidence to be contrary to law. But the converse of the rule is not true; where a writing is plain and unambiguous and by its terms illegal, parol testimony is not admissible for the purpose of purging the contract of its illegality. 3 Jones, Commentaries on Evidence, pp. 2777-8.

Respondent cites Goodale v. Wallace, 19 S. D. 405, 103 N. W. 651, 117 Am. St. Rep. 962, 9 Ann. Cas. 545, to support the rule that no forfeiture of interest will result when the excessive rate of interest was reserved by mistake. That case involved a mistake in computation which was not apparent upon the face of the contract and is not controlling in the instant case.

■ No reformation of the contract was sought by the plaintiff. Within the rule announced in Castle v. Gleason, supra, all evidence in support of the contention of the plaintiff that the provision for 12 per cent interest after maturity was included by mistake and contrary to the intent of the parties was immaterial and incompetent.

The judgment and order appealed from are reversed.

POLLEY, P. J., and CAMPBELL, WARREN, and RUROLPH, JJ., concur.